## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DENEIL GIROD**                                          **CIVIL ACTION**

**VERSUS**                                                   **NO. 20-0139**

**ROBERT C. TANNER, WARDEN**                 **SECTION "J"(4)**
**RAYBURN CORRECTIONAL CENTER**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.      Factual and Procedural Background

The petitioner, Deneil Girod ("Girod"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On November 6, 2014, Girod was charged by Bill of Information in Jefferson Parish with attempted second degree murder, home invasion by unauthorized entry into an inhabited dwelling with intent to harm or damage, and armed robbery.[3] He pleaded not guilty to the charges that same day.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1, p.1.

[3] St. Rec. Vol. 1 of 6, Bill of Information, 11/6/14.

[4] St. Rec. Vol. 1 of 6, Minute Entry, 11/6/14.

The record reflects that, on December 28, 2013, at approximately 1:00 a.m., Dustin Adams and Kelly Lee were awakened by a loud noise in their Westwego residence.[5]  Lee rushed out of bed to check on her eight-year-old daughter, A.L., whose bedroom was in the back of the house. When she exited her bedroom, Lee was confronted by two masked gunmen, one of whom yelled at her to "get down."  She complied and then crawled to A.L.'s bedroom followed by one of the intruders, later identified as Girod.  Adams, in the meantime, heard Lee make a "frightening sound," which alerted him to the fact that "something was wrong."  When he got out of bed, the other intruder pointed a pistol at the back of his head, forced him to lie on the floor, and demanded his money and keys.  Adams pointed to his car keys, and the intruder took them and ran out of the house through the front door.  None of Adams's three cars were taken.

After that intruder left, Adams ran to the back bedroom where Girod was holding Lee and her daughter at gunpoint.  Adams charged towards Girod, who fired a shot that grazed Adams's head.  Adams nonetheless physically attacked Girod and Lee joined in the scuffle to help Adams get the gun out of Girod's hand.  As Lee tried to hold Girod down, Adams ran to the kitchen, retrieved a knife, returned to the struggle, and stabbed Girod.  The altercation then moved from the bedroom, through the kitchen, and onto the back porch where Adams and Girod continued to struggle.  Lee followed the two men through the house, and as she passed through the kitchen, she also grabbed a knife.  Lee then went out the back door and saw that Girod had Adams pinned up against the porch railing.  Lee then attacked and stabbed Girod, which allowed Adams to break away.  Girod then ran off, jumped over a fence, and fled.  Adams also jumped over the fence to

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Girod*, 195 So.3d 1274, 1277-78 (La. App. 5th Cir. 2016); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 2016-KA-074, pp. 2-4, 6/30/16.

get help from his neighbors.  Lee went back inside to check on her daughter.  Lee had her daughter

hide in a closet and called 9-1-1.

　　　Detective  Christopher  Fisher  and  Officer  Todd  Usey  with  the  Westwego  Police

Department arrived first on the scene.  They entered the house through the rear door and saw blood

in the kitchen and encountered Lee, who was at that point "hysterical."  The two officers searched

the house but found no one else except Lee's daughter, who was "visibly shaken" and hiding in a

closet.  The officers located Adams in the neighborhood and returned him to the house for an

interview.  Adams and Lee were unable to provide any identifying information about the gunmen,

whose faces were masked.  Officer Usey also canvassed the neighborhood but did not locate any

suspects that night.

　　　When other officers processed the crime scene that night, they took pictures and recovered

evidence, including two knives and a Taurus semi-automatic 9 mm handgun.  The officers also

collected numerous blood samples from the kitchen floor, an outdoor gate, and underneath the

carport.  Months later, the blood samples, as well as DNA reference samples obtained from the

victims, were submitted to the Jefferson Parish Crime Lab for analysis.  The lab was able to match

one blood sample to the Girod.  Detective Andre Cavelier talked with Adams and Lee to see if

they knew Girod.  After seeing his picture, Adams identified him as "Deneil" whom he knew

because they worshipped at the same mosque.

　　　Based  on  the  blood  sample  analysis  and  Adams's  identification,  Detective  Cavelier

eventually obtained a warrant for Girod's arrest.  Other lab reports also later confirmed that the

DNA profiles from the swabs, including blood from underneath the carport, the gate at the rear of

the carport, and one of the knives was consistent with the DNA profile obtained from Girod.  Also,

the DNA profile taken from the blood samples on one of the knives at the scene was consistent with a mixture of Lee's DNA and Girod's DNA.

Girod was tried before a jury on September 14 and 15, 2015, and found guilty as charged on all three counts.[6]  At a September 18, 2015, hearing, the state trial court denied Girod's motion for new trial.[7]  On September 22, 2015, the state trial court sentenced Girod to concurrent prison terms of 47 years for attempted second degree murder, 25 years for home invasion, and 47 years for armed robbery, with an additional and consecutive term of five years for the use of a firearm.[8] The Court also ordered that the sentences be served without benefit of parole, probation, or suspension of sentence.[9]

That same day, Girod pleaded not guilty to the State's multiple offender bill filed September 17, 2015.[10]  At a January 28, 2016 hearing, the state trial court adjudicated Girod a second felony offender, vacated the armed robbery sentence, and resentenced Girod to serve 65 years in prison, concurrent with the other sentences and without benefit or parole, probation, or suspension of sentence, and with the five years firearm enhancement to be consecutively served.[11]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Girod's appointed counsel asserted that the sentence imposed was excessive under the circumstances.[12]  In his supplemental

---

[6] St. Rec. Vol. 1 of 6, Trial Minutes, 9/14/15; Trial Minutes, 9/15/15; Jury Verdict, 9/15/15; St. Rec. Vol. 3 of 6, Trial Transcript, 9/14/15; Trial Transcript, 9/15/15; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 9/15/15; St. Rec. Vol. 5 of 6, Voir Dire Transcript, 9/14/15.

[7] St. Rec. Vol. 1 of 6, Hearing Minutes, 9/18/15; Motion for New Trial, 9/18/15; Trial Court Order, 9/18/15; St. Rec. Vol. 4 of 6, Hearing Transcript, 9/18/15.

[8] St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/22/15; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/22/15.

[9] Id.

[10] St. Rec. Vol. 1 of 6, Minute Entry, 9/22/15; Multiple Bill, 9/17/15; St. Rec. Vol. 4 of 6, Sentencing Transcript, pp. 7-8, 9/22/15.

[11] St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 1/28/16; Judgment & Reasons, 1/28/16; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 1/28/16.

[12] St. Rec. Vol. 4 of 6, Appeal Brief, 16-KA-0074, 2/19/16.

pro se briefs, Girod asserted the following errors:[13]  (1) the evidence was insufficient to support the verdict; (2) trial counsel's performance was so deficient that it may have led to the conviction where counsel (a) failed to impeach Adams and Detective Cavelier regarding inconsistent and perjurious testimony, and (b) referred to Girod's having been in prison; (3) the record contains no proof that the State had subject matter jurisdiction to prosecute the case; and (4) the errors patent on the face of the record in restriction of his parole eligibility must be reviewed.

On June 30, 2016, the Louisiana Fifth Circuit affirmed Girod's convictions and sentences finding no merit in the claims asserted.[14]  The Court also instructed the state trial court to correct a discrepancy between the transcript and the commitment order.[15]  The state trial court corrected the order on June 30, 2016.[16]

On May 26, 2017, the Louisiana Supreme Court denied Girod's subsequent writ application without stated reasons.[17]  His conviction and sentence became final 90 days later, on August 24, 2017, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1)).

---

[13]St. Rec. Vol. 4 of 6, Pro Se Supplemental Appeal Brief, 2016-KA-0074, 6/1/16; Addendum to Supplemental Brief, 2016-KA-0074 (no date indicated).

[14]*Girod*, 195 So.3d at 1274; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 2016-KA-074, 6/30/16.

[15]*Id.*

[16]St. Rec. Vol. 1 of 6, Amended Sentencing Minutes, 6/30/16.

[17]*State v. Girod*, 221 So.3d 80 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KO-1547, 5/26/17; La. S. Ct. Writ Application, 16-KO-1547, 8/12/16 (dated 7/27/16); St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2016-KO-1547, 8/12/16.

After unsuccessful efforts to obtain free copies of documents and the closing argument transcript, on April 11, 2018, Girod signed and submitted to the state trial court an application for post-conviction relief in which he asserted the following grounds for relief:[18]

(1) his trial counsel was ineffective for failing to subpoena medical expert witness after the prosecutor failed to provide medical reports and examination analysis to determine the cause of the victim's injuries;

(2) his trial counsel was ineffective for failing to file pretrial motions to quash the bill of information which did not provide essential elements of the charged offenses;

(3) his trial counsel was ineffective for (a) failing to conduct a pretrial investigation of ballistic and forensic evidence to determine contamination and (b) failing to impeach or discredit certain witnesses and the use of their testimony;

(4) his trial counsel was ineffective for failing to protect his rights under the Confrontation Clause;

(5) his trial counsel was ineffective for failing to inform him of a plea offer and advising him to reject the plea offer;

(6) the cumulative errors of counsel denied him a fair trial;

(7) his trial counsel was ineffective for allowing an incomplete jury instruction on the definition of principal;

(8) prosecutorial misconduct occurred when the prosecutor failed to provide exculpatory evidence in violation of *Brady*;

(9) his conviction for armed robbery with a firearm does not rest on a sufficient and valid verdict;

(10) he was denied the right to confront the victim Lee at trial;

(11) his trial counsel was ineffective for allowing the State to proceed without calling Lee to the stand, failing to object to the insufficient evidence, and failing to object to the multiple bill; and

---

[18]St. Rec. Vol. 2 of 6, Application for Post-Conviction Relief, 4/17/18 (dated 4/11/18) *see*, St. Rec. Vol. 2 of 6, Motion for Production of Documents, 4/4/17; Trial Court Order, 4/7/17; Trial Court Order (2), 4/7/17; St. Rec. Vol. 6 of 6, 5th Cir. Order, 17-KH-335, 7/14/17; 5th Cir. Order, 17-KH-154, 3/28/17; 5th Cir. Writ of Mandamus, 17-KH-154, 3/16/17 (dated 3/13/17).

(12) his trial counsel was ineffective for failing to object to the State's use of statements from the child victim.[19]

After receiving the State's opposition response,[20] on August 1, 2018, the state trial court denied Girod's application. The Court held that claims 1, 4, 6, 7, and 9 were procedurally improper under La. Code Crim. P. art. 926(B)(3) for Girod's failure to state with reasonable particularity the factual basis for the relief sought. The Court also found claim 9 procedurally barred under La. Code Crim. P. art. 930.4(A) as repetitive of the sufficiency of the evidence claim asserted on direct appeal. The Court also found no merit in the remaining claims under *Brady v. Maryland*, 373 U.S. 83 (1963) or ineffective assistance and alleged cumulative error under *Strickland v. Washington*, 466 U.S. 668 (1984). The Court alternatively found that claim 12 (as listed above) was untimely asserted in the supplemental brief and barred from review under La. Code Crim. P. art. 930.4. The Court did not specifically mention claims 10 and 11 (as listed above) or its disposition of those two claims. Girod did not seek timely review of this order within the 30 days allowed by Louisiana law.[21]

However, forty-four days later, on September 14, 2018, Girod signed and submitted an untimely writ application to the Louisiana Fifth Circuit seeking review of the state trial court's order.[22] On October 29, 2018, the Louisiana Fifth Circuit denied the writ application finding no error in the state trial court finding that the sufficiency of the evidence claims were procedurally barred under La. Code Crim. P. art. 930.4 and no error in the denial of the remaining claims on the

---

[19]This claim was asserted in Girod's supplemental brief. St. Rec. Vol. 2 of 6, Motion to Supplement, 7/25/18 (dated 7/16/18).

[20]St. Rec. Vol. 2 of 6, Trial Court Order, 5/21/18; State's Response, 7/13/18.

[21]Under La. App. R. 4-3, a defendant has 30 days from issuance of the state trial court's ruling to seek review in the appellate court.

[22]St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 18-KH-548, 9/24/18 (dated 9/14/18).

merits under *Brady* and *Strickland*, including the two claims not mentioned in the state trial court's order.[23]

On September 17, 2019, the Louisiana Supreme Court denied Girod's related writ application for failure to show ineffective assistance of counsel under *Strickland* and failure to show the State withheld material exculpatory evidence under *Brady*. The Court also found that his remaining claims were repetitive under La. Code Crim. P. art. 930.4.[24]

## II.    **Federal Petition**

On January 10, 2020, the clerk of this Court filed Girod's federal petition for habeas corpus relief in which he asserts the following grounds for relief:[25] (1) his trial counsel was ineffective when counsel (a) failed to subpoena medical reports or medical experts to determine the cause of the victim's injury, (b) failed to object to admission of bloody photos under the Confrontation Clause, (c) failed to conduct a pretrial investigation of ballistics and forensic evidence, (d) failed to impeach Dustin Adams and Detective Andre Cavelier, (e) failed to object to the State's use of hearsay statements from the child victim in violation of his confrontation rights, (f) cumulative prejudice from counsel's errors, (g) failed to protect confrontation rights regarding his CODIS records and failed to object to the DNA expert's analysis and records, and (h) advised him to reject the plea offer; (2) excessive punishment; and (3) the cumulative errors rendered the conviction and sentence unreliable.

The State filed a response in opposition to Girod's petition asserting that the petition was not timely filed.[26] The State also reserved its right to assert procedural and substantive defenses

---

[23]St. Rec. Vol. 6 of 6, 5th Cir. Order, 18-KH-548, 10/29/18.

[24]*Girod v. State*, 278 So.3d 963 (La. 2019); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2018-KH-1921, 9/17/19; La. S. Ct. Writ Application, 18-KH-1921, 11/28/18 (dated 11/8/18).

[25]Rec. Doc. Nos. 1, 1-1.

[26]Rec. Doc. No. 16.

to the merits of Girod's claims should the petition be found timely filed.[27]   In a footnote, the State summarized its potential challenge to the merits noting that the state courts' denial of relief on Girod's ineffective assistance of counsel claims (claim nos. 1-8, 10) was not contrary to or involved an unreasonable application of clearly established federal fail under *Strickland*.   In addition, the cumulative errors arguments in claim nos. 6 and 10 were denied on procedural grounds as not cognizable on post-conviction review and, therefore, are barred from federal habeas review.   Further, because Girod's ineffective assistance claims fail under *Strickland*, there could be no cumulative error.   Finally, the State notes that the state courts' denial of relief on Girod's excessive punishment claim (claim no. 9) also was not contrary to or an unreasonable application of clearly established federal law.

In response to the State's opposition, Girod argues that he is entitled to equitable tolling for the untimely filing of his federal petition because he did not receive a copy of the Louisiana Supreme Court's September 17, 2019, post-conviction order until October 23, 2019.   He contends that this resulted in a significant delay in his preparation and filing of his federal petition.[28]   To support his claim for equity, Girod provided a copy of a portion of the prison mail logs indicating that he received a letter from the Louisiana Supreme Court on October 23, 2019.[29]

## III.   <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] applies to Girod's petition, which is deemed filed in this Court no later than

---

[27]Rec. Doc. No. 16, p. 9 & fn. 5.

[28]Rec. Doc. No. 19.

[29]*Id*. at p. 5.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify

January 8, 2020.[31]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes exhaustion of state court review but argues that Girod's federal petition was not timely filed within the one-year AEDPA filing period.  In response, Girod requested equitable tolling of his delayed filing.  The Court need not delve into Girod's equitable tolling request, because the State's statutory tolling calculation contains a critical mathematical error in its failure to properly apply the rule under *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001), although cited in its brief, to Girod's post-conviction proceedings.  Correction of this error renders Girod's federal petition timely filed as explained below.

As background, the AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) generally requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final.[32]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  A state post-conviction application is considered

---

an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after AEDPA's effective date submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Girod dated his signature on the form petition on January 8, 2020.  This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing to a court.

[32]The statute of limitations provision of the AEDPA, 28 U.S.C. § 2244(d) provides for other triggers which do not apply here.

"properly filed" within the meaning of § 2244(d)(2) when the applicant complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon*, 259 F.3d at 405.

Under *Melancon*'s long-standing rule, a state application ceases to be pending when the petitioner fails timely to file for review at the next level of the state courts. *Melancon*, 259 F.3d at 407. The *Melancon* decision made clear that a petitioner is entitled to 30-days of tolling and, because of the exceptions available for late filings, tolling is triggered once a late-filed writ application is filed unless the Louisiana appellate court otherwise procedurally rejects it. *Id*. In other words, in Louisiana, a state application for post-conviction relief remains pending for 30-days after the state trial court's ruling and ceases to be pending on that thirtieth day if the petitioner does not timely file for review in the appellate court. *Id*. at 406. If a late application is filed, the one-year AEDPA filing period is again tolled barring some other procedural error in that filing.

In this case, when calculating the statutory tolling applicable to Girod's state court proceedings, the State failed to recognize and include that 30-day period after the trial court's ruling and instead declared Girod's state post-conviction ruling "no longer pending" on the same day the state trial court issued the order, September 17, 2019. Under *Melancon* and its progeny,

that is not correct.  The State's error incorrectly denied Girod 30-days of statutory tolling and that 30-days was enough to render his federal petition timely filed.

To add clarity for the benefit of a reviewing court, Girod's conviction was final on August 24, 2017.  The AEDPA filing period began to run the next day and continued to do so for 229 days until April 11, 2018, when he submitted his state application for post-conviction relief.[33]  That application remained pending in the state courts until August 31, 2018, when he did not timely file for review in the Louisiana Fifth Circuit as required under La. App. R. 4-3.

The one-year AEDPA filing period began to run again on September 1, 2018, for an additional 13 days until September 14, 2018, when he filed a writ application with the Louisiana Fifth Circuit that was addressed on the merits and not procedurally rejected by the court.  The AEDPA filing period remained tolled until September 17, 2019, when the Louisiana Supreme Court denied Girod's related writ application.  At that time, 242 days of the one-year AEDPA filing period had expired, leaving Girod 123 days or until Tuesday, January 21, 2020,[34] to timely file his federal petition.  His petition is deemed filed under the prison mailbox rule on January 8, 2020, well within the properly calculated AEDPA deadline.

Girod's federal petition was timely filed, and there is no need for the Court to consider Girod's equitable tolling claim.  The State's limitations defense is rejected, and the Court will proceed to review of Girod's claims, all of which were addressed on the merits by the state courts.

---

[33]For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

[34]The final day fell on Saturday, January 18, 2020, which caused the last day to fall on the next business day. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.  Monday, January 20, 2020, was the Dr. Martin Luther King, Jr. legal holiday, leaving the deadline to fall on Tuesday, January 21, 2020.

IV.    **Standards of a Merits Review**

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Effective Assistance of Counsel (Claim No. 1(a)-(e), (g)-(h))

Girod alleges that he received ineffective assistance of counsel when his trial counsel (a) failed to subpoena medical reports or medical experts to determine the cause of the victims' injuries, (b) failed to object to admission of bloody photos under the Confrontation Clause, (c) failed to conduct a pretrial investigation of ballistics and forensic evidence, (d) failed to impeach Dustin Adams and Detective Andre Cavelier, (e) failed to object the State's use of hearsay statements from the child victim in violation of his confrontation rights, (g) failed to protect his confrontation rights regarding his CODIS records and failed to object to the DNA expert's analysis and records, and (h) advised him to reject the plea offer.

Girod asserted these claims on state court post-conviction review.  The state trial court first noted that some of Girod's ineffective assistance claims were procedurally inadequate under La. Code Crim. P. art. 926(B)(3), because Girod failed to provide factual support with particularity. The Court nevertheless denied relief finding that Girod failed to meet the burden under *Strickland* and that "counsel performed with diligence in a case with overwhelming evidence of guilt."[35]

The Louisiana Fifth Circuit agreed with the state trial court's finding that Girod failed to meet the burden under *Strickland*.  In addition, the Court held that the complained of deficiencies involved counsel's trial strategy which could not support a claim under *Strickland*.  The Court further held that the record did not support Girod's claim that his counsel failed to inform of the plea agreement and instead, the transcript established detailed discussions of the plea offer.  The Court also found that Girod had failed to brief the claim that his counsel should have objected to the jury instruction on principals.

---

[35]St. Rec. Vol. 2 of 6, Trial Court Order, 8/1/18.

The Louisiana Supreme Court also denied Girod's related writ application finding on this issue that he failed to meet his burden under *Strickland*.

### A.    *Strickland* Standards

In *Strickland*, relied on by the state courts, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Andrus v. Texas*, __ U.S. __, 140 S. Ct. 1875, 1881 (2020). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t

is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

   To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Andrus*, 140 S. Ct. at 1881; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112.  To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively

reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The Court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

### B.  Discussion

In crafting his ineffective assistance of counsel claims, Girod essentially repurposed many of his direct appeal challenges to the sufficiency of the evidence to assert that his counsel should have utilized a better defense strategy to discredit the evidence of his guilt, from the DNA evidence to the testimony of the witnesses. In other words, Girod is blaming his attorney for the jury's credibility determinations that favored the State's witnesses and evidence. The defense theory, however, was that the events that night were a drug deal gone bad, which led to the gun and knife fight with an unknown assailant (someone other than Girod).[36] The focus of the defense was to convince the jury that Adams was a "drug dealing," career criminal who was framing Girod, who had been in his home socially, as the assailant.[37] As the state courts noted, this was reasonable strategy in light of the evidence of Girod's guilt and the presence of his DNA on the scene.

As resolved by the state courts, matters of reasonable trial strategy, even if unsuccessful, are not alone a basis for relief under *Strickland*. *Strickland*, 466 U.S. at 689; *Johnson*, 394 F.3d at 337. As noted above, counsel's strategy is presumed to be objectively reasonable unless clearly

---

[36] *See* St. Rec. Vol. 4 of 6, Trial Transcript, pp. 41-48, 50-51, 52 (Det. Cavelier), p. 136 (Lee), 9/15/15

[37] *Id.* at pp. 108-09 (Adams), and *see* pp. 50-51, 52 (Det. Cavelier), pp. 82, 86-88, 93, 95-97, 98 (Adams); pp. 129-30, 136 (Lee).

proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. As the state courts also determined, Girod has not proven otherwise as to strategy or presented any support for his claims of ineffective assistance. Nevertheless, the Court will address each of Girod's claims.

### 1.    <u>Expert Testimony and Medical Records</u>

Girod contends that Adams's head injury was the basis for the attempted second degree murder charge. As a result, he claims that his counsel should have used expert medical testimony and records to show that Adams's head injury was not actually caused by a bullet or, for that matter, that Lee had any injuries at all to her hands. Girod, however, has not provided the evidence required to support his claims or the need for expert testimony or other medical evidence.

The decision whether to call witnesses and present certain evidence is a matter of trial strategy. *Woodfox*, 609 F.3d at 808. To establish a related claim of ineffective assistance, the petitioner must identify the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. *Id*. at 808; *accord Day*, 566 F.3d at 538. "This requirement applies to both uncalled lay and ***expert*** witnesses." *Woodfox*, 609 F.3d at 88 (emphasis added). The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

Girod has not identified any expert who could or would have testified that the cause of the injury on Adams's head was anything other than as reported or that Lee did not have injuries to her hand (or self-inflicted the injuries to frame him). His claim is conclusory and speculative. The jury saw photographs and received testimony from the officers and the victims regarding the

injuries to Adams's head and Lee's hand which were apparent when police arrived.[38]  The jury also heard evidence that both victims did not refuse treatment as Girod now claims.  Instead, the two victims were "cleaned up" by medical personnel at the scene, and following the investigation at the home, the victims took themselves later that morning to the hospital for further treatment.[39]

As to the relevance of the injuries, Louisiana law allows a defendant's intent to be inferred from his actions and the circumstances, including the extent and severity of the victim's injuries. *State v. Bone*, 107 So.3d 49, 58 (La. App. 5th Cir. 2012); *State v. Lewis*, 698 So.2d 456, 459 (La. App. 5th Cir. 1997).  However, it also is well established that the act of aiming a lethal weapon and discharging it in the victim's direction, even without injury, will support a trier of fact's finding that the defendant acted with specific intent to kill.  *See Bone*, 107 So.3d at 58; *State v. Noble*, 425 So.2d 734, 736 (La. 1983).  Thus, despite what the medical records would have shown, it was enough to support the verdict for the jury to have evidence proving that Girod discharged his gun in the direction of Adams's head.  Notably, counsel would have been remiss to produce for the jury medical records which may have confirmed and further established that the two victims received medical care for the significant wounds shown in the photographs.  As determined by the state courts, Girod has failed to establish that his counsel was deficient in failing to call a medical expert or present a speculative challenge to the evidence.

The state court's denial of relief on these claims was not contrary to or an unreasonable application of *Strickland*.  Girod is not entitled to relief on these claims.

---

[38]*See, e.g.*, St. Rec. Vol. 4 of 6, Trial Testimony, pp. 67-68, 108 (Adams), pp. 122-123, 139, 144-45 (Lee).
[39]*Id.*

### 2.    <u>Pictures of Adams's Wounds</u>

As for the pictures of Adams's wounds, Girod also contends that his counsel should have objected to the photographs to protect his confrontation rights, because the pictures "bolstered" the testimony of Detective Fisher and Adams without the testimony of a medical examiner.[40]  As noted above, the injury to Adams was not the only evidence of Girod's guilt, some of which included the DNA evidence and the fact that Girod shot at Adams.

Nevertheless, admission of the photographs did not violate the Confrontation Clause to have prompted an objection by Girod's counsel.  A photograph is not a "testimonial statement" and introduction of a photograph into evidence does not implicate the Confrontation Clause.  *Sevin v. Parish of Jefferson*, 621 F. Supp.2d 372, 383 (E.D. La. 2009) (citing *United States v. Beach*, 196 F. App'x 205, 209 (4th Cir. 2006) (introduction of photographs of missing evidence did not violate the Confrontation Clause)).  Girod's counsel did not act deficiently or prejudicially in failing to object to the photographs and any objection under the Confrontation Clause would have been without merit. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).  Girod's counsel was not ineffective for failing to object to the photographs of Adams's or Lee's wounds.

The state court's denial of relief on these claims was not contrary to or an unreasonable application of *Strickland*.  Girod is not entitled to relief on these claims.

---

[40]Rec. Doc. No. 1-1, p. 15.

### 3.  Failure to Investigate Ballistic and Forensic Evidence

Girod also argues that his counsel was ineffective for failing to investigate the details of the bullet that was recovered at the scene by the crime scene investigator.  Girod recognizes that investigator was able to follow and memorialize the path of the bullet which went through the bedroom wall, through the bathroom walls, out of a kitchen wall, and into the refrigerator where it passed through a carton of milk.  Girod contends that his counsel should have had the bullet tested to prove that Adams's DNA (from the head wound) was not on the bullet to disprove Adam's claim that he was injured.  He further claims that this would have allowed counsel to defend against the crime scene investigator's claim that the bullet could not be tested for hair or human material because it was contaminated by milk.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that it would have altered the outcome of the trial.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."); *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Here, Girod suggests that his counsel should have had the bullet tested to prove that it did not contain any human or DNA evidence to support Adams's claim that he was struck by the bullet.

However, the jury heard testimony from the State's witnesses that DNA *was not and could not* have been recovered from the bullet found covered in milk in the refrigerator. His counsel did not prove the lack of DNA or human material because there was none on the bullet, and the jury heard that testimony. Girod does not indicate how testing the contaminated bullet would have provided anything else exculpatory.

Girod would have had his counsel test a bullet to prove what the State's witness already conceded, there was no proof that Adam's DNA was on the bullet contaminated and deemed untrustworthy for testing of that nature. Girod's contrived notion and unsupported allegation does not prove his counsel deficient for failing to do the impossible. *See Miller*, 200 F.3d at 282. On the contrary, trial counsel's actions were reasonable in light of the defense theory that the lack of DNA and lack of forensic evidence from the bullet and gun supported the defense's claim that the gun belonged to Adams not Girod. Even if counsel should have had the evidence tested, Girod cannot show prejudice. As determined by the state courts and as discussed in this report, the other evidence of Girod's guilt was overwhelming, and included his DNA amongst the blood samples collected at the scene, consistent with the evidence of a struggle with the gunman.

For these reasons, Girod's speculative claims of ineffective assistance of counsel in failing to test and challenge the evidence are insufficient under *Strickland*. The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.

### 4.    <u>Failure to Impeach of Adams and Detective Cavelier</u>

Girod alleges that his counsel failed adequately to impeach Adams with regard to his testimony of how he knew Girod and to impeach Detective Cavelier's credibility. With respect to Adams, Girod argues that his counsel should have used the discrepancies in his statements as to whether he knew Girod and his revelation that he knew Girod from prison before they attended

the same mosque.  With regard to Detective Cavelier, Girod argues that his counsel should have questioned Cavelier in more detail about his ethics and the basis for his separation from the police force.  Relief on both claims was denied by the state courts for failure to meet the *Strickland* standards.

Under *Strickland*'s deferential standards, "[a] decision whether and, if so, how to impeach a witness falls within the purview of counsel's trial strategy."  *Bruce v. Cain*, No. 13-6435, 2014 WL 6713117, at *6 (E.D. La. Nov. 26, 2014).    As such, it is not to be lightly second-guessed. *Strickland*, 466 U.S. at 698; *see*, *e.g.*, *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."); *Laugand v. Cain*, No. 06-5269, 2007 WL 3275127, at * 7 (E.D. La. Nov. 6, 2007).  The transcript reflects that Girod's counsel rigorously questioned Adams and Detective Cavelier about Adams's criminal past and relationship with Girod.[41]  Both Adams and Detective Cavelier confirmed during cross-examination by Girod's counsel that Adams and Lee could not identify any features of the perpetrators' covered faces.[42] After DNA testing was done, the Detective was able to ask Adams (and Lee) if he knew Girod and Adams identified Girod's picture and confirmed that he knew Girod.[43]  Adams also clarified for the jury that when he told the Detective "I don't think so," he was not denying that he knew Girod, but was stating he did not believe Girod could have done this to him.[44]  Adams also told the Detective during their meeting that he and "Deneil" attended the same mosque; Adams was never

---

[41]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 41-43, 46-46-53, 55 (Det. Cavelier), pp. 85-88, 88-89, 94-95, 98-100, 105-06, (Adams), 9/15/15.

[42]*Id*. at pp. 37-38, 41 (Det. Cavelier), pp. 78, 91 (Adams).

[43]*Id*. at pp. 48-49 (Det. Cavelier), p. 94 (Adams).

[44]*Id*. at pp. 94-95 (Adams).

asked if he had been in jail before or if he knew the man known as Deneil from prison.[45]  Girod's counsel made a valiant effort to raise doubt before the jury about Adams's truthfulness and credibility.

The jury, however, also received testimony that Adams did not and had no basis to identify Girod as one of the masked perpetrators on the night of the home invasion, despite the fact that he knew Girod from the neighborhood, the mosque, and shared time in prison.  Adams has not indicated what further questioning by his counsel would have revealed or how further questioning would have altered the jury's impression of Adams's credibility or their verdict.

The same is true of his counsel's efforts to challenge the competence and veracity of Detective Cavelier's testimony and investigation of the crime.  While the jury must assess the credibility of each witness, in this case, Detective Cavelier's testimony was consistent with that of the other officers, the police and lab reports, as well as other witnesses and evidence.  Adams has not established that any additional challenge to Cavelier's personal credibility would have altered the jury's verdict or their acceptance of the other overwhelming evidence of his guilt.

Finally, amongst his complaints of counsel's impeachment efforts, Girod also contends that his counsel prejudiced him by referencing his prior time in prison.  The reference to Girod's prison stay was a necessary result of his counsel's efforts to discredit Adams, claiming that Adams's lied to police about how he knew Girod.  Curiously, Girod in juxtaposition to this claim, also lauds his counsel for attempting to discredit Adams and actually suggests his counsel should have done more to prove Adams lied about knowing Girod from prison.  Despite Girod's conflicted arguments, his counsel's reference to Adams's prison time was a firm part of the defense's theory that the incident that night was a drug deal gone bad.  Girod's counsel also suggested through his

---

[45]*Id*. at pp. 39, 42, 47 (Det. Cavelier), pp. 77-79, 99 (Adams).

questioning of Adams that Adams used the relationship to set-up Girod for the crime.  While the defense was unsuccessful, the record does not demonstrate that Girod's counsel was ineffective for pursuing the defense or briefly mentioning Girod's past stent in prison.

The state court's denial of relief on these claims was not contrary to or an unreasonable application of *Strickland*.  Girod is not entitled to relief on these claims.

### 5.    Failure to Object to Child-Victim's Hearsay Statements

Girod also contends that his counsel was ineffective when he allowed the State to admit hearsay testimony about the A.L.'s statements to police in violation of his confrontation rights. The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  *See Crawford v. Washington*, 541 U.S. 36 (2004).  The Sixth Amendment safeguards the defendant's right to confront his accusers and to subject their testimony to rigorous testing in an adversary proceeding before the trier of fact.  *California v. Green*, 399 U.S. 149 (1970).

The confrontation protections under these rules, however, are not infinite and are subject to numerous exceptions.  For example, "[u]nder the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest."  *Woodfox*, 609 F.3d at 814.  If a statement is not hearsay, it does not violate the Confrontation Clause.  *See United States v. Smith*, 822 F.3d 755, 762 (5th Cir. 2016) (no violation of *Crawford* where out-of-court statements were introduced to show how law enforcement developed suspects, rather than for the truth of matter asserted).

Contrary to Girod's arguments, his trial counsel did object when Detective Christopher Fisher testified that he found A.L. in the closet and repeated what she said to him about her

condition and what she saw happen.[46]  When Girod's counsel objected, the State argued to the

state trial court that A.L.'s statements met the exceptions of "present sense impression, excited

utterance;" at the bench conference, the Court denied the objection on the "present sense"

exception.[47]

Therefore, had Girod's counsel repeated the objection to other references to A.L.'s

statements, it would have similarly failed.  His counsel's failure to repeatedly assert a meritless

objection "is not ineffective lawyering; it is the very opposite."  *Clark*, 19 F.3d at 966; *accord*

*United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a

meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim

because the result of the proceeding would not have been different had the attorney raised the

issue."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and

prejudice does not issue from, failure to raise a legally meritless claim."); *see also Koch v. Puckett*,

907 F.2d 524, 530 (5th Cir. 1990) ("Counsel is not required to make futile motions or objections.").

The state courts' denial of relief on this issue was not contrary to or an unreasonable

application of *Strickland*.  Girod is not entitled to relief on this issue.

### 6.    Failure to Protect Confrontation Rights as to CODIS Evidence

Girod alleges that his counsel was ineffective when he failed to protect his confrontation

rights by challenging the State's DNA lab technician, Laura Oliver, on grounds that she did not

upload the CODIS information to which he was matched and when he failed to subpoena the

CODIS Administrator, Sarah C. Seron, who notified the police that there had been a CODIS match.

Broadly construing his claim, Girod alleges his counsel was ineffective for failing to challenge the

---

[46]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 152-155, 9/15/15.

[47]*Id*. at p. 154.

CODIS information which played a fundamental role in his identification and the methodology used by Oliver in her DNA testing.

As set forth previously in this report, the Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him" and prohibits hearsay testimony not subject to cross-examination by the accused. *Crawford*, 541 U.S. at 59, n.9. A scientific report may be a formalized testimonial material subject to the Confrontation Clause protections if it was created primarily for supporting the accusation of a specific individual for purposes of trial. *See Bullcoming v. New Mexico*, 564 U.S. 647, 657-58 (2011) (finding no Confrontation Clause violation with expert's reference to a report that "was not prepared for the primary purpose of accusing a targeted individual").

Indeed, if a laboratory report of a testimonial nature is admitted as evidence without providing a defendant the opportunity to cross-examine the analyst who prepared the report, the report violates the Confrontation Clause. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321-24 (2009). Further, providing a substitute analyst who did not perform the test to testify about a laboratory report used as evidence is not sufficient to ameliorate Confrontation Clause concerns. *See Bullcoming*, 564 U.S. at 661-62.

Thus, for Girod's counsel to have been ineffective, Girod would have to show that his counsel failed to protect him from the impermissible admission of a testimonial scientific report through the testimony of one who did not conduct the testing in violation of his confrontation rights. However, neither the Supreme Court nor any federal court has held the CODIS index of DNA profiles to be either testimonial or prohibited hearsay to invoke Confrontation Clause protections. *United States v. Pritchard*, 993 F. Supp.2d 1203, 1213 (C.D. Cal. 2014) (CODIS index of DNA profiles are not testimonial under *Bullcoming*); *Shaw v. Uribe*, No. 11-10675, 2014

WL 69512, at 22-24 (C.D. Cal. Jan. 8, 2014) (CODIS records do not violate the Confrontation Clause because they are not admitted for the truth of the matter asserted and instead are background information to explain why the State's expert obtained another sample from defendant to compare to crime scene DNA); *see also United States v. Curry*, 723 F. App'x 314, 318-19 (6th Cir. 2018) (no evidentiary error or prejudice from admission of the CODIS index match when the State's expert testified that the CODIS match merely led her to conduct her own testing against the rape kit profile); *accord Williams v. Illinois*, 567 U.S. 50, 58 (2012) (the prosecution's DNA expert can rely on and testify regarding the laboratory results produced by an outside agency to explain the assumptions on which the expert based her opinion in doing her own independent testing).

Girod's counsel did not violate his confrontation rights by failing to challenge the CODIS records or references to them by Oliver. First, the CODIS information was not used to establish an element of the crimes for which he was being tried. It was used to explain how the police developed him as a suspect and as background for Oliver's independent testing of the DNA samples obtained from Girod and the crime scene. Furthermore, it was Oliver's test results, not the CODIS index, that provided the critical evidence confirming Girod's identity and guilt, as further explained below. *Williams*, 567 U.S. at 58; *Curry*, 723 F. App'x at 318-19; *Shaw*, 2014 WL 69512, at 22-24. Under the foregoing precedent, neither *Crawford*, *Melendez-Diaz*, nor *Bullcoming*, provide any legal basis for Girod's counsel to have challenged the CODIS information or Oliver's related testimony as hearsay in violation of the Confrontation Clause. Girod's counsel was not ineffective for failing to assert a legally meritless objection or pursuing a baseless line of questioning. *Johnson*, 306 F.3d at 255; *Wood*, 503 F.3d at 413.

As for counsel's questioning of Oliver, and failure to call the CODIS administrator, Girod also has failed to meet the *Strickland* test. As with most of his arguments, Girod seeks to second

guess, and scrutinize in hindsight, everything his counsel did or did not do during the trial. This is not the goal of *Strickland* or the standards imposed upon this Court under the doubly-deferential standards of the AEDPA.

Furthermore, as Girod admits, his counsel began months before trial to challenge, although unsuccessfully, the lack of proof available to him to establish that a CODIS hit was actually made because it was only referenced in the police report.[48]  His counsel advised the state trial court at a March 5, 2015, hearing that he wished to pursue a motion to suppress the buccal swab sample because the record contained no proof of the CODIS hit returned May 13, 2014.  At the hearing, it was made clear to Girod's counsel by the prosecution and the state trial court that the CODIS hit was not evidence of guilt, and instead any challenge to the actual identification and arrest was the result of the local testing done.[49]  This information is consistent with the precedent cited above indicating that the CODIS index hit was not testimonial evidence and any confrontation challenge would be directed to the confirming local test.

The person who conducted the local testing in April of 2014 was Laura Oliver.[50]  She tested and prepared separate reports from the evidence seized at the crime scene and from the buccal swab taken from Girod to confirm Girod as the contributor of the blood found at the scene.[51] Because Girod seems confused about the DNA testimony and evidence from his trial, the Court will further summarize Oliver's explanation and the testing timeline.

In March of 2014, Oliver received and confirmed the blood samples obtained from the scene of the crime and from Adams, Lee, and A.L., and tested each to develop DNA profiles

---

[48]St. Rec. Vol. 3 of 6, Hearing Transcript, pp. 4-6, 3/5/15.

[49]*Id*. at 5-7.

[50]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 178, 9/15/15.

[51]*Id*. at 179-81.

indicated or mixed therein.[52]  Based on control samples from Adams, Lee, and A.L., Oliver was

able to separate their DNA and identify the DNA of the then-unknown perpetrator.[53]  She did not

know at the time that the unknown DNA was Girod's DNA, because she did not yet have a known

sample from him.[54]  Oliver issued her first report on March 24, 2014, which included the DNA

profiles she found.[55]  On April 14, 2014, the unknown DNA profile taken from the black handled

steak knife was uploaded by the lab's CODIS administrator into the CODIS computer software.[56]

On May 13, 2014, the CODIS system returned a match identifying Girod as the DNA contributor

and whose known DNA profile was in the system.[57]

        Once the hit was returned by CODIS, the lab was notified by the Louisiana State Police

and the CODIS administrator at the lab notified the detectives.[58]  After this, if the detectives

provide a known sample from the identified person, like the buccal swab obtained from Girod, the

lab does what is called a "CODIS confirmation" to test the buccal swab against the other

information previously obtained.[59]  In Girod's case, Oliver received from detectives the buccal

swab taking from Girod.  She tested Girod's DNA profile from the buccal swab against the profiles

she previously obtained in March of 2014 from each piece of crime scene evidence.[60]  She

independently determined that Girod was the contributor of the DNA from the crime scene with

---

[52]*Id*. at 181.

[53]*Id*. at 181, 186, 188-189, 190, 192-93.

[54]*Id*. at 190, 192-93.

[55]*Id*. at 182, 190.

[56]*Id*. at 190-92.

[57]*Id*. at 190-192.

[58]*Id*. at 190-91.

[59]*Id*. at 195.

[60]*Id*. at 195.

odds of 1 to 100 billion that it could have been someone else.[61]  This was in Oliver's second report which was shown to the jury at trial.

As is clear from the record, Girod's counsel was able to question Oliver about the actual DNA testing that was done on the evidence and samples in his case.  He also questioned her about the CODIS system and how it factored into her reports, which it actually did not.  Oliver's testimony also makes it reasonable for Girod's counsel to have proceeded to trial without subpoenaing the CODIS administrator, Sarah Seron, to question her.  Seron did **no** testing of any evidence or DNA samples, and simply uploaded or scanned in the data from Oliver's report for the CODIS system software to do its work.  In addition, the CODIS profile was not the confirming identifier, because Oliver did separate DNA analysis once a buccal sample was obtained directly from Girod.

In short, Girod has not established that his counsel failed properly to question Oliver on any relevant topic or erred in any way in failing to call Seron to testify about a relevant or critical topic since she did **not** do DNA analysis; instead, she did nothing more than data entry and notify the detectives that the computer system identified Girod as a match.  All of this information was already before the jury.

Finally, Girod has not established that his counsel had any cause to question the methodology used by Oliver or her laboratory.  Oliver testified in detail on direct examination how she compared the profiles and looked for the common strands to confirm Girod as the contributor of the samples considered.  Oliver also specifically testified that " . . . our lab is an accredited laboratory, and by that what I mean is we meet standards set, set by the FBI . . ."[62]  Counsel often

---

[61]*Id*. at 180, 185.

[62]*Id*. at 182.

will not delve into those standards and how they are met so as not to give more credibility to the expert's testimony. Girod's arguments also are speculative and hypothetical in so far as he suggests that Oliver did not use appropriate standards to conduct her analysis of the DNA samples to have triggered a need for counsel to further question her. "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp.2d 831, 859 (W.D. Tex. 2004). Counsel's professional or tactical judgment is not to be questioned in hindsight.

Girod has failed to establish that his counsel failed to protect his confrontation rights or that counsel was ineffective as he contends in connection with the DNA expert testimony. The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*. Girod is not entitled to relief on this issue.

### 7.    The Plea Offer

Girod alleges that his counsel violated his constitutional rights by failing to notify him of a plea offer and then advising him to reject it. The state courts denied relief on this claim under *Strickland* with the appellate court noting that the plea discussions took place on the record.

The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected as effective counsel is "a right that extends to the plea-bargaining process." *Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). In *Frye*, the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. In the companion case of *Lafler*, the Supreme Court specifically addressed assistance of counsel when there is a rejected plea offer:

34

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.  If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Lafler*, 566 U.S. at 168.  Under *Lafler*, a petitioner also is required to prove that he was prejudiced by showing that "the outcome of the plea process would have been different with competent advice."  *Id*. at 163; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Specifically, the petitioner must prove "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler*, 566 U.S. at 163-64.  The Supreme Court in *Lafler* also noted that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  *Lafler*, 566 U.S. at 174.  Moreover, bad advice alone generally is insufficient to establish a *Lafler* violation.  *Wilson v. Addison*, 577 F. App'x 782, 786 (10th Cir. 2014); *United States v. Patterson*, 525 F. App'x 681, 685 (10th Cir. 2013).  As the *Lafler* court made clear, the *Strickland* prejudice prong must be considered even when the advice is deficient performance.

In this case, Girod has not established the deficient advice or actual prejudice necessary under *Lafler* or *Frye*.  The transcript indicates that Girod's counsel did not perceive that the State had actually made a "formal offer" prior to the morning of trial.  As counsel stated, "I was under the impression, Your Honor, that that was not an offer."[63]  Even the prosecutor described the prior

---

[63]St. Rec. Vol. 4 of 6, Trial Transcript, p. 4, 9/14/15.

conversation as tenuous with "some discussion in regards to a possible resolution . . . something in the time frame of 25 years."[64]  This demonstrates that even the prosecutor was not firm in the parameters of any offer and instead sought a *Frye* hearing to discuss it with Girod.

Under *Lafler* and *Frye*, Girod's counsel was only obliged to communicate to him a formal plea offer.  With no firm offer from the State, counsel was not deficient in failing to advise Girod.

When the possibility of plea discussions were brought up by the State on the morning of trial, Girod's counsel indicated to the Court that the offer of 25 years was not of interest to the defense.[65]  Despite this representation, the parties participated in the *Frye* hearing to hear directly from Girod about his view on the plea of which he was newly made aware.  In response to the state trial court's initial questioning, before Girod conferred with his counsel, Girod clearly indicated, ". . . I'm not interested in it."[66]  After the trial court gave Girod time to discuss it with his counsel, Girod again declined to accept the plea offer.[67]  Thus, even before discussing anything with his counsel, Girod out right rejected the plea offer.

Considering the *Frye* factors, it is apparent that Girod was not inclined to accept the plea offered by the State.  There also is no proof or support for Girod's claim that his counsel advised him not to accept the plea offer without providing him with proper advice or discussing the pros and cons of the offer.  His conclusory assertions are not enough to prove ineffective assistance. *See Ross*, 694 F.2d at 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") (citing *Woodard*

---

[64]*Id.*

[65]*Id.* at 4.

[66]*Id.* at 5.

[67]*Id.* at 5-6.

*v. Beto*, 447 F.2d 103 (5th Cir. 1971)); *Schlang v. Heard*, 691 F.2d 796 (5th Cir. 1982). Thus, there is nothing to establish that his counsel advised him to reject the offer or that he would have accepted the plea except for the advice. *See Adams v. Cooley*, No. 15-6207, 2017 WL 2729568, at *14 (E.D. La. Feb. 1, 2017) (petitioner's statement in his petition regarding counsel's advice was not evidence proving his counsel performed deficiently).

Even if the court were to assume that counsel advised Girod against accepting the plea offer, Girod has not shown that "there is a reasonable probability . . . that [he] would have accepted the plea . . . but for the ineffective advice of counsel." *Lafler*, 566 U.S. at 164. Significantly, as noted above, Girod independently rejected the plea offer even before consulting with his counsel at the *Frye* hearing. Even now, Girod does not clearly state that he would have accepted the plea offer and professed his guilt as required for relief under *Frye*. This is emphasized by his persistent claims of innocence. *See, e.g., Banks v. Cain*, No. 14-2554, 2015 WL 1133242, at *6 (W.D. La. Mar. 12, 2015) (Order adopting report and recommendation) ("Considering Petitioner's resolute proclamations of innocence at sentencing, throughout the state court proceedings, and in the instant proceeding, the trial court's decision to reject Petitioner's [*Frye*] claim on the basis that he did not suffer any prejudice was not unreasonable.").

Girod has failed to establish any of the *Frye* factors necessary to establish ineffective assistance of counsel. There was no formal plea offer for his counsel to have communicated to him before the morning of trial. Once a formal offer was made that morning, the state trial court held a *Frye* hearing. During the *Frye* hearing, Girod rejected the plea offer before discussing it with his counsel. Girod's independent rejection of the plea defies any contention that "but for counsel's advice" he would have accepted the offer or that the outcome of the plea proceeding would have been different as required under *Lafler* and *Frye*.

For these reasons, the Court finds that the denial of relief by the state courts was not contrary to or an unreasonable application of *Frye*, *Lafler*, or *Strickland*, especially considering the doubly-deferential standards of the AEDPA when applying *Strickland*.  Girod is not entitled to relief on this claim.

**VI.    No Excessive Sentence (Claim No. 2)**

Girod claims that his sentences is excessive because under prevailing Louisiana law, it is disproportionate to the need for punishment which amounts to a life sentence despite the "terrible" and "horrendous" circumstances of the crimes he committed.[68]  He contends that, because of his newly-alleged drug addiction which motivated his crimes, an extended jail sentence will serve no purpose and merely will contribute to the overcrowding in and expenses of Louisiana jails.

The Louisiana Fifth Circuit addressed Girod's excessive sentence claim on direct appeal.[69] The Court noted that, during the initial sentencing, the state trial court properly and adequately considered the sentencing guidelines and Girod's criminal history, and articulated the factual basis for the sentence, relying in part on the circumstances of the crime and the victim impact, especially on the child victim.  The Court also compared Girod's sentence to the sentencing exposure he faced and to other similar cases for consistency.  This was the last reasoned opinion on the claim. *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

---

[68]Rec. Doc. No. 1-1, pp. 49, 51.

[69]*Girod*, 195 So.3d at 1279-80; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 2016-KA-074, pp. 6-7, 6/30/16.

To the extent Girod challenges the state trial courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the cognizable under federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within state statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *see also Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw). When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare," and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 23-30 (2003) (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63 (2003).

For purposes of federal habeas review under the AEDPA standard, an excessive sentence claim presents a question of law. *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); *Davis v. Cain*, 44 F. Supp.2d 792, 798 (E.D. La. 1999); *Jones v. Kaylo*, No. 99-

0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).  The Court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

Under Louisiana law at the time, the prison sentence for attempted second degree murder Girod faced was not less than 10 years nor more than 50 years without benefit of parole, probation, or suspension of sentence.  La. Rev. Stat. Ann. § 14:27(D)(1)(a), § 14:30.1(B).  Because a child under age 12 was present, Girod faced a prison sentence for home invasion of no less than 10 years nor more than 25 years, with at least 10 years to be served without benefit of parole, probation, or suspension of sentence.  La. Rev. Stat. Ann. § 14:62.8.

In addition, the prison sentence for armed robbery was a term of not less than 10 years and nor more than 99 years to be served without benefit of parole, probation, or suspension of sentence, La. Rev. Stat. Ann. § 14:64(B), and with an additional consecutive term of 5 years without benefit of parole, probation, or suspension of sentence where, as here, a firearm was used, La. Rev. Stat. Ann. § 14:64.3(A).  Because Girod was found to be a second felony offender on the armed robbery count, pursuant to La. Rev. Stat. Ann. § 15:529.1, he faced an enhanced sentencing range of 49½ to 198 years in prison, plus the consecutive 5 years for the firearm enhancement under § 14:64.3.

Girod challenges the length of his sentence, which totals 70 years following enhancement under the state's habitual offender laws.  As previously outlined, the state trial judge sentenced Girod to serve concurrent terms of 47 years in prison for attempted second degree murder, 25 years in prison for home invasion, and 65 years in prison as a second felony offender for armed robbery, plus an additional 5 years for use of a firearm to be served consecutive to the armed robbery sentence, and all to be served without benefit of parole, probation, or suspension of sentence.  As a result, Girod faces a combined term of 70 years in prison without benefit of parole, probation or suspension of sentence.  Each of Girod's sentences clearly fell within the statutory limits set by

the Louisiana legislature for the crimes he committed. Accordingly, this federal habeas court considers only proportionality compared with sentences imposed in similar cases.

Before imposing sentence on Girod, the state trial court addressed the facts and circumstances of the case at length and gave specific reasons for imposing the various sentences. As noted by the state appellate court, the Trial Court discussed the impact on the victim, Girod's criminal history, and other relevant factors necessary to contour and support the sentence under the circumstances of Girod's case to set a basis for finding the sentences proportionate to the crime. In addition, as found by the state courts, a survey of the Louisiana cases in the public domain establishes that Girod's sentences were not out of line with sentences imposed upon similarly situated defendants, and some with less severe factual circumstances, even when the particular counts are considered separately or combined. *See*, *e.g.*, *State v. Fuller*, 980 So.2d 45 (La. App. 5th Cir. 2008) (defendant sentenced as second felony offender to 190 years plus consecutive 5 years for armed robbery of a novelty store and the clerk with gun pointed at victim's head without injury); *State v. Williams*, 85 So.3d 759 (La. App. 4th Cir. 2012) (defendant sentenced as first offender to *consecutive* terms of 49 years at hard labor for attempted second degree murder and 29 years at hard labor for aggravated burglary during which the victim was shot in the face in front of the eight-year-old child); *State v. Toliver*, 205 So.3d 948 (La. App. 1st Cir. 2016) (defendant sentenced as a second-felony offender to 60 years in prison plus a consecutive 5 years for use of firearm to be served without the benefit of parole, probation, or suspension of sentence); *State v. Mathieu*, 283 So.3d 1041 (La. App. 3rd Cir. 2019) (defendant sentenced to 60 years in prison plus a consecutive 5 year firearm enhancement after pleading guilty to avoid multiple bill for armed robbery with a firearm at Dollar General store during which a clerk was shot in the leg); *State v. Debrow*, 277 So.3d 897 (La. App. 2d Cir. 2019) (defendant sentenced as first offender to 65 years

in prison for attempted second degree murder committed during armed robbery where the victim was shot three times); *accord State v. Wesley*, 161 So.3d 1039 (La. App. 2d Cir. 2015) (defendant sentenced as third felony offender to 65 total years for attempted armed robbery with a firearm, aggravated battery, and possession of a firearm by a convicted felon); *State v. Glenn*, 162 So.3d 525 (La. App. 2d Cir. 2015) (defendant sentenced as a second offender to 55 years in prison plus consecutive 5 years for firearm use for armed robbery); *State v. Daugherty*, 175 So.3d 1164 (La. App. 3rd Cir. 2015) (defendant convicted of attempted second degree murder and home invasion and sentenced, respectively, as first offender to concurrent terms of 40 years in prison without benefit of probation, parole, or suspension of sentence and 10 years in prison).

Applying the factors and legal standards discussed above, Girod has not demonstrated that his composite sentence of 70 years in prison for attempted second degree murder, home invasion where a child was present, and armed robbery with a firearm enhancement was unconstitutionally excessive or disproportionate to the crimes he committed or when compared to other cases.  The state courts' denial of relief was not contrary to or an unreasonable application of clearly established federal law.  He is not entitled to relief on this claim.

**VII.    No Cumulative Error (Claim No. 1(f) and 3)**

Girod alleges that the combined errors of his counsel, as outlined in his prior ineffective assistance of counsel claims, created cumulative prejudice entitling him to habeas relief.  Girod asserted this claim on post-conviction review in the state courts and the claim was denied as meritless under the *Strickland* standards.

The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'"  *Perez v.*

*Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992)). However, in *Derden*, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). Later, the Court further clarified when such errors may be considered:

> Under this doctrine, "errors of *state law*, *including evidentiary errors*, are *not* cognizable in habeas corpus." [*Derden*, 978 F.2d] at 1458 (emphasis added). Instead, such errors are of the requisite constitutional nature only if they "infuse[ ] the trial with unfairness as to deny due process of law." *Id*. (quoting [*Lisenba v. California*, 314 U.S. 219, 228 (1941)]).

*Perez*, 172 F. App'x at 82 (emphasis in original).

Under these standards, Girod has not identified any errors in his trial of a constitutional magnitude that his counsel allowed to occur. The *Perez* Court, however, did not specifically address whether a federal habeas claim could be made for the accumulation of deficiencies in the performance of counsel under *Strickland*. In fact, the Fifth Circuit has repeatedly recognized that the United States Supreme Court "has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims." *Hill v. Davis*, 781 F. App'x 277, 280-81 (5th Cir. 2019). As such, the state court's denial of relief could not have been contrary to Supreme Court precedent that does not exist.

Nevertheless, the Fifth Circuit has also indicated that if a claim of cumulative prejudicial error by counsel is to be entertained, the habeas court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively. *United States v. Hall*, 455 F.3d 508 (5th Cir. 2006). It is therefore

well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *Id*. at 520 (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010). As the Fifth Circuit has repeatedly noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (agreeing that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised").

The Court has reviewed each of the alleged errors of trial counsel presented by Girod. None of the claims demonstrate an error in counsel's performance that amounted to ineffective assistance under *Strickland* or that caused any cumulative prejudicial effect. *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden*, 978 F.2d at 1454, 1461 (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)). For these reasons, Girod has failed to establish that denial of relief on this issue, or any facet of his ineffective assistance of counsel claim, was contrary to, or an unreasonable application, of Supreme Court law, including but not limited to *Strickland*. He is not entitled to relief on this issue.

## VIII.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Girod's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[70]

New Orleans, Louisiana, this 23rd day of October, 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[70]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.